UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LA'VON GILES,

    Plaintiff

v.

MICHAEL BOUCHARD,
CURTIS CHILDS,
JOHN DOE 1, JOHN DOE 2,
ARAMARK CORRECTIONAL
SERVICES, INC., and ANNA
DOLINSKI,

    Defendants.
_____/

Case No. 2:17-cv-10153
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

### REPORT AND RECOMMENDATION REGARDING THE OAKLAND COUNTY DEFENDANTS' MOTION TO DISMISS (DE 23)

**I.    RECOMMENDATION**: The Court should grant Defendants Bouchard, Childs, John Doe 1 and John Doe 2's July 19, 2017 motion to dismiss (DE 23), but only as to the causes of action it challenges.

**II.    REPORT**

    **A.    BACKGROUND**

On April 25, 2016 and May 16, 2016, Plaintiff was sentenced in two Oakland County Circuit Court cases. Case Nos. 2016-258318-FH, 2016-258460-FH. On January 17, 2017, while located at the Oakland County Jail (OCJ) in Pontiac, Michigan, Plaintiff filed two cases in this Court: **(1)** Case No. 2:17-cv-

10153-GAD-APP and **(2)** Case No. 2:17-cv-10154-GAD-RSW. In each case, Plaintiff took issue with the conditions of confinement at the OCJ. (DEs 1 at 5-7.) And in each case, the Court granted Plaintiff's application to proceed without prepaying fees or costs and entered an order directing service without prepayment of costs and authorizing the U.S. Marshal to collect costs after service is made.

On June 14, 2017, Judge Drain entered an order consolidating these cases, dismissing the latter case, providing that all future documents should be filed in the instant case, and requiring an amended complaint (DE 20), consequently thereafter terminating Defendant Bouchard's March 20, 2017 motion to dismiss (DE 16) and Plaintiff's April 4, 2017 motion for leave to file an amended complaint (DE 17). On July 5, 2017, Plaintiff filed an amended complaint against six defendants: **(1)** Michael Bouchard, **(2)** Curtis Childs, **(3)** John Doe 1, **(4)** John Doe 2, **(5)** Aramark Correctional Services, Inc., and **(6)** Anna Dolinski. (DE 22.)[1]

### B. PENDING MATTERS

Judge Drain has referred this case to me for pretrial matters. Currently before the Court is a July 19, 2017 motion to dismiss, filed on behalf of Defendants

---

[1] Defendants Aramark and Dolinski have yet to appear in this lawsuit. In Case No. 17-10154, a waiver of service was returned unexecuted as to Aramark. (DE 12.) On March 31, 2017, Plaintiff was ordered to provide a correct address for Defendant Aramark. (DE 18.) Plaintiff provided two addresses by way of a letter dated April 12, 2017. (DE 21, DE 22.) The Court will follow up with the USMS as to the status of service of the instant, amended complaint upon Defendants Aramark and Dolinski.

2

Bouchard, Childs, John Doe 1 and John Doe 2 (hereafter referred to collectively as the "Oakland County Defendants"), in which arguments are presented as to several, but not all, of the claims set forth in Plaintiff's amended complaint. (DE 23 at 12-20). To date, Plaintiff has not filed a response.

### C.   FED. R. CIV. P. 12

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the

3

defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Furthermore, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[2]

### D. DISCUSSION

#### 1. The Court should grant Oakland County Defendants' motion to dismiss as unopposed, but only as to claims that it actually addresses.

As noted above, at the time Plaintiff initiated this lawsuit in January 2017, he was located at the OCJ in Pontiac, Michigan. (DE 1 at 2, 14, 18.) In February

---

[2] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

4

2017 and again in March 2017, he informed the Court that his address had changed to 111 Altamonte Boulevard, Frackville, PA 17931.  (DEs 9, 10, 14, 15.)  In fact, *1111 Altamonte Boulevard* is the address for the SCI at Frackville.  (*See* www.cor.pa.gov.)  At the time Plaintiff mailed his amended complaint – dated June 28, 2017 and filed July 5, 2017 - he was apparently still located at SCI Frackville.  (DE 22 at 24.)

The Oakland County Defendants filed the instant motion to dismiss on July 19, 2017 and served it on Plaintiff at SCI Frackville (1111 Altamont Blvd.).  (DE 23 at 21.)  A motion to dismiss is dispositive in nature; thus, ordinarily, any response thereto would have been due "within 21 days after service of the motion." E.D. Mich. LR 7.1(e)(1)(A),(B).  However, on July 20, 2017, I entered an order requiring Plaintiff to file a response on or before August 21, 2017, a copy of which was mailed to *111 Alamonte Boulevard*.  (DE 24, text-only certificate of service.) This order was not returned to the Court as "undeliverable" or as "unable to forward."  In any case, in the absence of an order stating otherwise, Plaintiff's response to Defendant's July 19, 2017 motion to dismiss would have been due on or about Monday, August 14, 2017.  Fed. R. Civ. P. 6(d)

To date, Plaintiff has not filed a response, nor has he requested an extension of time within which to respond.  Fed. R. Civ. P. 6(b) ("Extending Time."). Indeed, his only filings following his amended complaint are letters informing the

Court of his changes of address and a motion seeking the appointment of an attorney.

As the local rules of this Court provide, "[a] respondent opposing a motion must file a response, including a brief and supporting documents then available." E.D. Mich. LR 7.1(c)(1). Plaintiff has failed to file a response to the July 19, 2017 motion to dismiss or a request for an extension of time in which to do so. It is presumed that the matters served upon him were received. *See Rucker v. Potter*, 215 F. App'x 406, 408 (6th Cir. 2007) ("there is a rebuttable presumption that mail is received by the person to whom it is addressed . . . ."); *Caney Creek Coal Co. v. Satterfield*, 150 F.3d 568, 573 (6th Cir. 1998) ("A 'timely and accurate mailing raises a rebuttable presumption that the mailed material was received.'") (quoting *Luker,* 826 F.2d at 697 (internal quotation marks and citations omitted)). Moreover, there is no indication on the docket that matters sent to Plaintiff were returned as undeliverable – either by Defendants' regarding their July 19, 2017 motion to dismiss or by the Clerk of this Court regarding my July 20, 2017 order requiring a response. Therefore, the Court should consider this motion unopposed and grant it on that basis, but only, as explained in Section II.D.3 *infra*, as to those claims which are actually addressed in the motion, *i.e.*, excluding Plaintiff's First Amendment claim for retaliation in Count VII. *See Humphrey v. U.S. Attorney General's Office*, 279 F.App'x 328, 331 (6th Cir. May 15, 2008) ("where, as here,

plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."). *See also Juide v. Michigan Department of Corrections*, Case No. 2:16-cv-13806, 2017 WL 5712103 at *2 (E.D. Mich. Oct. 24, 2017) (report and recommendation of Patti, M.J.) (recommending that the Court grant Defendant Corizon Health, Inc.'s motion to dismiss as unopposed), *adopted on* Nov. 27, 2017 (Cox, J.).

> **2.   Alternatively, the Court should grant the Oakland County Defendants' Rule 12 motion to dismiss on its merits, but, only as to the claims it actually addresses.**
>
> **a.   Plaintiff's amended complaint against the Oakland County Defendants**

Plaintiff sues Oakland County Sheriff Michael Bouchard, Captain Curtis Childs, and OCJ employees John Doe 1 and John Doe 2 in their official and/or individual capacities. (DE 22 ¶¶ 4-7, 10.) After describing the alleged conditions of confinement on the intake and general population floors of the OCJ, Plaintiff describes his alleged experiences at OCJ, from the time of his March 23, 2016 arrest through January 2017. (DE 22 ¶¶ 12-35.) Plaintiff makes several allegations against these Defendants. (DE 22 ¶¶ 36-49.) Plaintiff brings each of the nine causes of action – based on either the Eighth or the Fourteenth Amendments - against Defendants Bouchard and Childs; however, Plaintiff only asserts Counts I through VII against John Doe 1 and John Doe 2. (DE ¶¶ 59-103.)

7

The Oakland County Defendants attack Plaintiff's pleading in terms of its Section 1983 official capacity claims, Section 1983 individual capacity claims, claims regarding the conditions of confinement at OCJ, and claims regarding the diabetic meals at OCJ. (DE 23 at 4, 12-20.) I will address them in that order.

### b. Section 1983 official capacity claims

The Oakland County Defendants argue that Plaintiff's official capacity claims against them should be dismissed, because "Plaintiff fails to make plausible allegations that his constitutional rights were violated pursuant to an *official* policy, practice, or custom[.]" (DE 23 at 12-14 (emphasis added).) To be sure, Plaintiff alleges that "Defendants Bouchard, Childs and John Does Nos. 1 and 2" acted "pursuant to extant and accepted practice[s], custom[s] or polic[ies][.]" (DE 22 ¶¶ 38, 40, 41, 44.) He also alleges that "Defendants Bouchard, Childs and John Does Nos. 1 and 2 directed, permitted and/or condoned . . . the practice, custom or policy of re-assigning detainees, including the Plaintiff, to the intake floor tanks for disciplinary, punitive, retaliatory or control purposes for lengthy periods of time (i.e., three to 17 days) . . . [.]" (DE 22 ¶ 46) Likewise, his allegations are directed against "the aforecited defendants" with respect to alleged "practices, customs and policies" regarding conditions of confinement, punitive or retaliatory acts, and inadequate dietary services. (DE 22 ¶¶ 63, 68, 73, 78, 83, 88, 93, 98, 103) Thus, as these individually named Oakland County Defendants note, Plaintiff's amended

8

complaint "fails to identify any *officially executed* 'policy' or 'custom,'" and "focuses upon the alleged misconduct of the individual Defendants." (DE 23 at 14) (emphasis added).

Moreover, the Oakland County Defendants seem to be correct that Plaintiff "does not allege that a County custom or policy *caused* a violation of his constitutional rights." (DE 23 at 13-14 (emphasis added).) "[A] municipality can be liable under § 1983 only where its policies are the moving force [behind] the constitutional violation." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (internal quotations omitted). *See also Helmer v. Guest*, No. CIV. 09-11697, 2011 WL 691367, at *1 (E.D. Mich. Feb. 3, 2011) (Duggan, J.) ("Plaintiff has not alleged facts sufficient to find that a policy of Oscoda County was the moving force behind his injuries; thus, his official capacity claim against Guest fails."). More to the point, at the end of each cause of action, Plaintiff states: "The actions, inactions and/or conduct by the aforecited defendants have directly and proximately *caused* the Plaintiff to be exposed to, and suffer needless harm and injury, all as more particularly described herein above." (DE 22 ¶¶ 61, 66, 71, 76, 81, 86, 91, 96, 101 (emphasis added).) Thus, whatever Plaintiff says about practices, policies and procedures, his "cause" allegations relate to the individual Defendants' "actions, inactions and/or conduct," not the actions of a governmental

9

entity.

### c. Section 1983 individual capacity claims

The Oakland County Defendants argue that Plaintiff's individual capacity claims against them should be dismissed, because "Plaintiff fails to make plausible allegations of their personal involvement[.]" (DE 23 at 14-16.) The Court should agree.

In Plaintiff's own words, Defendants Bouchard and Childs were responsible for the operation and management of the OCJ, "as well as the supervision of all OCJ employees and contract personnel[,]" and he claims that Defendants John Doe 1 and John Doe 2 had certain duties and responsibilities at the OCJ with respect to detainee complaints and classification. (DE 22 ¶¶ 4, 5, 6, 7.) Plaintiff makes various factual allegations regarding the Oakland County Defendants (*Id*. ¶¶ 36-45), and he alleges that "Defendants Bouchard, Childs and John Does Nos. 1 and 2 directed, permitted and/or condoned . . . [,]" the complained of conditions of confinement and retaliatory reassignment to the intake floor. (*Id*. ¶ 46.)

It seems, as the Oakland County Defendants argue, that Plaintiff's amended complaint "fails to state any facts demonstrating that Sheriff Bouchard or Captain Childs were personally involved or encouraged a specific type of conduct leading to the alleged deprivation of Plaintiff's constitutional rights." (DE 23 at 15.) As such, Plaintiff has not alleged "that any of the supervisory officials who were

10

defendants in this case actively participated in or authorized any . . ." of the matters of which Plaintiff complaints. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "At best, [Plaintiff] has merely claimed that [Defendants] were aware of . . ." such matters, but "did not take appropriate action." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). This is not enough to sustain a claim on this basis. "Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (internal quotations omitted).

### d. Conditions of confinement at the OCJ and the Eighth and Fourteenth Amendments (Counts I through VI)

#### i. Overcrowding

Plaintiff's amended complaint takes issue with the "conditions of confinement" at OCJ. (*See*, *e.g.*, DE 22 ¶¶ 12-35.) Counts I through VI claim that, for extended periods of time, Plaintiff was "forced to sleep on floors . . .[,]" "deprived of physical exercise or other activities . . . [,]" and subjected to "overcrowded conditions [under which] he was forced to eat, sleep, wash, defecate and live daily in excessively close proximity with a large number of other detainees . . . [.]" (DE 22 ¶¶ 60, 65, 70, 75, 80, 85.)

The Oakland County Defendants argue that Plaintiff's allegations regarding the conditions of confinement at the OCJ should be dismissed, because Plaintiff's claims "do not rise to the level of constitutional deprivations" under the Eighth and

11

Fourteenth Amendments. (DE 23 at 16-19.) The Court should agree. To the extent Plaintiff takes issue with "overcrowding" at OCJ, "overcrowding is not, in itself, a constitutional violation," and Plaintiff has not "alleged that the allegedly overcrowded conditions resulted in an unconstitutional denial of such basic needs as food, shelter, or sanitation." *Agramonte v. Shartle*, 491 F.App'x 557, 560 (6th Cir. 2012). *See also Grissom v. Davis*, 55 F. App'x 756, 757–58 (6th Cir. 2003) (Plaintiff did not allege or present any evidence that "the seven-day mattress restriction deprived her of basic human needs or caused her to suffer serious harm."); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (Plaintiff's complaints that "cells were overcrowded, prisoners were denied daily showers and out-of-cell exercise, and religious services were inadequate[,]" for 7 and 10 day periods did not allege a deprivation of constitutional magnitude.) As such, Plaintiff's aforementioned allegations about sleep, exercise / activity, and overcrowding at OCJ do not implicate the Eighth Amendment.[3]

---

[3] Plaintiff claims he was arrested and admitted to OCJ in March 2016. (DE 22 ¶ 24.) He was sentenced in April and May of 2016. *See* www.oakgov.com, Court Explorer, Case Nos. 2016-258318-FH and 2016-258460-FH (Oakland County). The factual allegations underlying his amended complaint span the period from March 23, 2016 through January 2017. (DE 22 ¶¶ 24-34.) The case was initiated on January 17, 2017. Thus, it is not entirely clear whether his claims arise under the Fourteenth Amendment, which applies to conditions of confinement for pretrial detainees, or the Eighth Amendment, which applies to post-conviction conditions. In any event, "[a]lthough the Eighth Amendment's protections apply specifically to post-conviction inmates, . . . the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well." *Miller*

I acknowledge that Plaintiff does claim that he "was not issued hygiene essentials (*i.e.*, soap, toothbrush, toothpaste, etc.)[,]" and that he alleges some specific injury. (DE 22 ¶¶ 24, 26, 28, 30, 32, 35, 49, 57.) However, none of these alleged injuries appears to relate to the absence of hygiene products.[4] Moreover, many of Plaintiff's other allegations about injury are conclusory and vague. (*See* DE 22 ¶¶ 61, 66, 71, 76, 81, 86, 91, 96, 101.) Plaintiff must allege physical injury. *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) ("Even if we read his complaint to allege emotional or mental injuries, Harden-Bey cannot bring an Eighth Amendment claim for such injuries because he did not allege a physical injury.") (referencing 42 U.S.C. § 1997e(e)).

### ii. Classification (Count VII, in part)

Likewise, Count VII concerns "the infliction of punitive or retaliatory acts against the Plaintiff (i.e., the repeated re-assignment to the intake floor tanks, under

---

*v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (internal and external citations omitted). Either way, his claims are untenable, for the reasons stated herein.

[4] Plaintiff alleges that "*[a]s a result* of being confined in the OCJ under the conditions described herein above," he "had to carry out all necessary functions in close proximity with many other detainees, . . . could sleep only for very brief periods, . . . could not eat properly, and . . . suffered severe constipation, fatigue, lethargy, depression and more." (DE 22 at 49 (emphasis added).) He also alleges that "[t]he daily meals provided by . . . Aramark . . . and its agent, . . . Dolinski, in 2016 *caused* the Plaintiff to suffer from weight loss, severe constipation, constant insomnia, dizzy spells, depression and more throughout mid- and late 2016." (DE 22 ¶ 57 (emphasis added).) As such, it seems these "injuries" were allegedly caused *by his diet* at OCJ.

conditions prevailing there) for lawful and constitutionally protected grievance activities[.]" (DE 22 ¶ 90; *see also* DE 22 ¶¶ 39, 46, 47.) To the extent Plaintiff challenges his re-classifications or re-assignments to the intake floor or the general population floor or restricted housing (DE 22 ¶¶ 24, 26, 28, 30, 32, 34, 37, 39, 90; *see also* DE 22 ¶ 55), Plaintiff seems to admit that three such transfers were the result of citations – one for "fighting with another prisoner," one for "engaging in an argument with another prisoner[,]" and one for "unauthorized medications." (DE 22 ¶¶ 26, 28, 30.) Moreover, as Defendants point out, "although Plaintiff appears to take issue with the manner in which he was classified in the OCJ, he does not have "a constitutional right to a particular security level or classification." (DE 23 at 18-19 (quoting *Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004)).

### e. Diabetic meals (Counts VIII & IX)

Plaintiff claims to be a Type 2 diabetic, with related hypertension, whose conditions were reported to medical and dietary personnel upon his admission to OCJ. (DE 22 ¶ 50.) Within the factual allegations about his *dietary needs*, Plaintiff does not expressly mention any of the Oakland County Defendants; however, he does expressly mention Defendants Aramark and Dolinski. (*See* DE 22 ¶¶ 51-58; *compare* DE 22 ¶¶ 32, 34.) Counts VIII and IX attempt to set forth Eighth and Fourteenth Amendment claims against Defendants Aramark and Dolinski, *as well as Bouchard and Childs*, for "failing and/or refusing to ensure

14

that . . . Plaintiff was provided with a carefully controlled and monitored daily diet appropriate to meet his special (diabetic) dietary needs[.]" (DE 22 ¶¶ 95, 100.) However, "a complaint about the preparation or quality of prison food . . . would generally be far removed from Eighth Amendment concerns." *Cunningham v. Jones*, 567 F.2d 653, 659–60 (6th Cir. 1977). Also, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Thus, to the extent Plaintiff is challenging the adequacy and appropriateness of the diabetic meals served to him, it would "not support a claim of deliberate indifference." (DE 23 at 19-20.) More to the point, no matter how they are labeled, these causes of action are clearly directed toward Defendants Aramark and Dolinski, *not Bouchard and Childs*.[5]

### 3. First amendment retaliation (Count VII, in part)

It is clear to the Court that, whatever label Plaintiff places upon Count VII, he is attempting to allege a First Amendment retaliation claim. "A retaliation claim essentially entails three elements:

(1)   the plaintiff engaged in protected conduct;

---

[5] Defendant Aramark is alleged to have "contracted to provide all daily meals for OCJ detainees[,]" and Dolinski is allegedly "responsible for providing appropriate meals for OCJ detainees." (*See* DE 22 ¶¶ 8, 9.)

15

>    (2)   an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
>
>    (3)   there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Plaintiff claims he was sent to the intake floor as a penalty for making verbal complaints and written grievances about the diabetic meals and food trays and OCJ conditions of confinement. (DE 22 ¶¶ 11(f), 32, 34, 39, 55; *see also* DE 22 ¶¶ 37, 46b, 47b.). Then, within Count VII, Plaintiff claims that Defendants directed, permitted and/or condoned "the infliction of punitive or retaliatory acts against the Plaintiff . . . for lawful and constitutionally *protected* grievance activities[.]" (DE 22 ¶ 90 (emphasis added); *see also* DE 22 ¶ 93.) It is also clear from Plaintiff's description of the "intake floor" that he considers transfer there to be an *adverse action*. (*See*, *e.g.*, DE 22 ¶¶ 13-18.) The Court does not have to read these *pro se* allegations too liberally to arrive at the conclusion that Plaintiff is attempting to allege a retaliation claim, even though he does not expressly cite the First Amendment. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("the allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]").

16

In fact, Defendants' motion acknowledges that "Count VII alleges violations of the Fourteenth Amendment for retaliating against Plaintiff for filing grievances." (DE 23 at 7-8.) Yet, their motion does not explain why dismissal of this cause of action is warranted, and perhaps, as it has been described above, this omission was because the claim appears to have been adequately pleaded. Thus, even if the Court grants the Oakland County Defendants' motion – whether as unopposed or upon the merits – such a ruling would not operate to dismiss the portion of Count VII that alleges First Amendment retaliation.

### E. CONCLUSION

The Oakland County Defendants' motion to dismiss is unopposed and should be granted on that basis, but only as to those causes of action it challenges. Moreover, it appears that Plaintiff's claims against the Oakland County Defendants fail to state a claim upon which relief may be granted, but, again, only as to those causes of action challenged. If the Court agrees with either of these conclusions, then it should dismiss Plaintiff's claims against Defendants Bouchard, Childs, John Doe 1 and John Doe 2 under Counts I, II, III, IV, V, VI, VIII and IX. It should further dismiss Plaintiff's claims against these Defendants under Count VII, but only to the extent it concerns classification; however, Count VII should survive as to the Oakland County Defendants, to the extent that it asserts a claim of First Amendment retaliation.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

18

Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 18, 2017       s/Anthony P. Patti
                                              Anthony P. Patti
                                              UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on December 18, 2017, electronically and/or by U.S. Mail.

                                              s/Michael Williams
                                              Case Manager for the
                                              Honorable Anthony P. Patti